# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

DAWN M. BLOCK,

        Claimant,

vs.

ANDREW M. SAUL,

Commissioner of Social Security,[1]

        Defendant.

No. 18-CV-118-LTS

**REPORT AND RECOMMENDATION**

_____

Plaintiff Dawn Marie Block ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **affirm** the Commissioner's decision.

## I. BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 11) and only summarize the pertinent facts here. This is an appeal from a denial of disability insurance benefits ("DIB"). Claimant was born on February 8, 1974. (AR[2] at 157.)

_____

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] "AR" cites refer to pages in the Administrative Record.

1

Claimant has an AA in accounting. (*Id.* at 33.) She allegedly became disabled due to fibromyalgia, anxiety, depression, hypothyroidism, anemia, severe migraines, and heavy bleeding/periods. (*Id.* at 193.) Claimant's alleged onset of disability date was March 11, 2015. (*Id.* at 189.) Claimant filed an application for DIB on September 10, 2015. (*Id.* at 157.) Claimant's claim was denied originally and on reconsideration. (*Id.* at 87-90, 94-97.) A video hearing was held on February 1, 2018 with Claimant and her attorney, Corbett Luedeman, in Cedar Rapids, Iowa and ALJ John Sandbothe and vocational expert ("VE") Jeff L. Johnson in West Des Moines, Iowa. (*Id.* at 32-55.) Claimant and the VE testified. (*Id.* at 33-55.) The ALJ issued an unfavorable decision on May 2, 2018. (*Id.* at 14-24.)

Claimant requested review and the Appeals Council denied review on September 14, 2018. (*Id.* at 1-5.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On November 16, 2018, Claimant timely filed her complaint in this Court. (Doc. 4.) The case was originally assigned to Chief District Court Judge Leonard T. Strand and me. On August 8, 2019, all briefing was completed. On August 9, 2019, the Honorable Leonard T. Strand referred the case to me for a Report and Recommendation.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant

numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

3

(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience.

*Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    *The ALJ'S Findings*

The ALJ made the following findings at each step of the five-step process regarding Claimant's disability status.

At step one, the ALJ found that although Claimant had worked since the alleged disability onset date, the work did not rise to the level of substantial gainful activity. (AR at 16.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: obesity, fibromyalgia, and left shoulder impingement. (*Id.*) The ALJ also considered, but did not find disabling, Claimant's left ankle swelling, hypothyroidism, and mental impairments. (*Id.* at 16-17.) The ALJ specifically found Claimant's medically determinable mental impairments caused no more than mild limitation in any functional area. (*Id.* at 17.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.*)

At step four, the ALJ found that Claimant had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a),

> except she may lift up to 10 pounds frequently, while remaining on her feet no more than two hours total in a workday. In addition, the claimant can neither reach overhead nor more than occasionally engage in gross manipulation with her left, upper extremity. Moreover, she may only occasionally balance, stoop, kneel, crouch, crawl, or climb.

(*Id.*) The ALJ further found Claimant is able to perform her past relevant work as a medical dispatcher both as actually and generally performed. (*Id.* at 23-24.)

Because the ALJ found there was work Claimant could perform at step four, he did not move on to step five of the analysis. Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 24.)

**B.    *The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

# III.   DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to support his decision that she could perform her past relevant work and (B) failing to provide good reasons for the weight afforded to the opinion of examining psychologist Barbara Lips, Ph.D.  Claimant further argues the ALJ was not appointed in a constitutional manner. Thus, the ALJ's decision must be vacated and Claimant's case remanded so a properly-appointed ALJ may adjudicate the claim.

## A.   *Substantial evidence supports the ALJ's decision that Claimant could perform her past relevant work as it is generally performed.*

The decision of whether a Claimant can perform her past relevant work "is often critical and 'every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.'" *Martin v. Sullivan*, 901 F.2d 650, 652 (8th Cir. 1990) (quoting *Nimick v. Sec. of Health & Human Servs.*, 887 F.2d 864, 866 n.2 (8th Cir. 1989)) (internal quotation omitted).  To that end, ALJs may rely on the testimony of vocational experts "concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

A claimant can return to her past relevant work if she can "perform '[t]he actual functional demands and job duties of a particular past relevant job' . . . . [or if she can] perform the 'functional demands and job duties of the occupation as generally required by employers throughout the national economy.'" *Martin*, 901 F.2d at 653 (finding claimant not disabled because although he could not perform his past relevant work as a stockroom attendant as he had performed it at the light exertional level, there were stockroom attendant jobs available he could perform at the sedentary exertional level) (quoting SSR 82-61); *Wagner v. Astrue*, 499 F.3d 842, 846-48, 854 (8th Cir. 2007) (affirming decision of district court that claimant could perform job of police chief as

generally performed in the national economy even if he could not perform it as he had actually performed it in his town).

Claimant originally argued that the ALJ's decision that she can perform her past relevant work as actually and generally performed was not supported by substantial evidence. (Doc. 12 at 6.) In his resistance, the Commissioner conceded that the record does not support the ALJ's finding that Claimant can perform her past relevant work as actually performed because the record does not describe the specifics of plaintiff's job duties as actually performed.[3] (Doc. 16 at 15.) Thus, the issue is now narrowed to whether the ALJ's decision that Claimant could perform her past relevant work as generally performed is supported by the record.

Claimant argues that the ALJ erred when he found she was able to perform her past relevant work as a dispatcher as generally performed because the VE's testimony did not resolve an apparent conflict between Claimant's RFC and the dispatcher *DOT* job description. (Doc. 12 at 4.) Specifically, Claimant asserts that because she can only occasionally lift her left arm over her head, the dispatcher job, which requires frequent lifting, is inappropriate. (*Id.*) The Commissioner responds that the VE testified that a person with the Claimant's RFC can perform the job of dispatcher as defined in the *DOT*. (Doc. 16 at 16.)

---

[3] Although the Commissioner conceded that substantial evidence did not support the conclusion that Claimant could perform her past relevant work as actually performed, he did argue that the ALJ properly evaluated Claimant's subjective complaint that she was unable to sit for long periods of time. (Doc. 16 at 19-22.) The Commissioner made this argument because it related to any argument Claimant might make that the "ALJ's RFC for sedentary work was flawed." (*Id.* at 19 n.7.) Claimant has not challenged the ALJ's physical RFC finding. Therefore, the Commissioner's arguments are moot and need not be addressed.

The relevant part of the RFC states, "the claimant can neither reach overhead nor more than occasionally engage in gross manipulation with her left, upper extremity."[4] The *DOT* job description for "dispatcher" states that the job requires reaching "frequently." *DOT*, 249.167-013, Dispatcher, Motor Vehicle, 1991 WL 672312. For Social Security disability purposes, "reaching" means "extending the hands and arms in any direction." *Kemp ex. rel Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014) (quoting *Selected Characteristics of Occupations*, App. C).[5]

---

[4] This sentence is not as clear as it could be. While the parties agree that the RFC limits Claimant to occasional overhead reaching with her left arm (Doc. 12 at 4; Doc. 16 at 16-17), I find this is a misreading of the RFC. The RFC describes two limitations: (1) Claimant cannot reach overhead with her left arm, and (2) Claimant can only occasionally engage in gross manipulation with her left upper extremity. A proper reading limits Claimant to no overhead reaching with her left arm. "Neither reach overhead" and "nor more than occasionally engage in gross manipulation with her left, upper extremity" are separate clauses. The clauses do not share a modifier. More importantly, my reading mirrors the hypotheticals presented to the VE, which included "no overhead left reaching . . . [and] occasional left gross manipulation." (AR at 53.) That being said, the parties' misreading does not significantly change their arguments, except for one argument proffered by the Commissioner related to the percentage of time Claimant can lift her arm (Doc. 16 at 17). The Commissioner is not prejudiced by loss of this argument.

[5] Although neither party raised this as an issue, I note that at no time during the hearing did the ALJ ask the VE if his testimony was consistent with the *DOT*.

> SSR 00–4p, mandates: "When a [VE] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [VE] . . . evidence and the information provided in the [*DOT*]." The ALJ was required not only to ask the expert whether there was a conflict, but also to obtain an explanation for any such conflict.

*Renfrow v. Astrue*, 496 F.3d 918, 920–21 (8th Cir. 2007) (citation omitted). However, when no such conflict exists, the error is harmless. *Id.* at 921. Here, the error is harmless because the VE testified that the person in hypothetical one could do Claimant's past work, even though she could not lift her left arm. (AR at 52-53.) The ALJ and Mr. Luedeman reviewed the exhibit at AR 275, which contained Claimant's past relevant work and their *DOT* codes at the beginning of the hearing. (*Id.* at 33.) The VE also testified that the person in hypothetical two would not be employable and gave his professional opinion in response to Mr. Luedeman's question regarding employers' tolerance for time off-task and missing work. (*Id.* at 53-54.)

9

In support of her argument that remand is required because the VE's testimony did not resolve this apparent conflict, Claimant relies on *Kemp*, 743 F.3d 630 and *Bennett v. Comm'r of Soc. Sec.*, No. 1:16-cv-227, 2016 WL 7395795 (N.D. Ohio Dec. 2, 2016). In *Kemp*, the ALJ told the VE before he testified that his testimony had to be consistent with the *DOT* and that the VE was to explain any conflict between his testimony and the *DOT*. 743 F.3d at 632. In the hypothetical the ALJ proffered to the VE, he limited the claimant to occasional overhead reaching with both extremities. *Id.* In his decision, the ALJ relied on the VE's testimony to find there were check weigher jobs in the national economy that the claimant could perform. *Id.* The ALJ also concluded, without explanation, that the VE's testimony was consistent with the *DOT*. *Id.* On appeal, the court found that the record did not show that the ALJ or VE "even recognized the possible conflict between the hypothetical describing a claimant who could reach overhead only occasionally" and the *DOT* check weigher job that involved constant reaching. *Id.* at 633. Therefore the court vacated the district court's judgment and remanded to the case. *Id.*

The case at bar can be distinguished from *Kemp*. First, the claimant in *Kemp* had limited use of both arms while Claimant here only has limited use of one arm. Second, and more importantly, unlike the ALJ in *Kemp* who sought no clarification from the VE regarding the possible conflict between the claimant's limitations and the job requirements, here the ALJ asked the VE if limiting a hypothetical claimant to no overhead reaching with her left arm would preclude her from performing her past sedentary work. (AR at 54.) The VE answered that it would not prevent her from performing her past work. (*Id.*) Thus, the ALJ not only recognized the possible conflict between Claimant's RFC and the dispatcher job, but also elicited testimony from the VE to resolve that conflict. Once the conflict was resolved, the ALJ could rely on the VE's testimony to reach his conclusion that Claimant could perform her past dispatcher work

10

as generally performed.  *See Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010) (when hypothetical proffered to VE is not defective, the ALJ can rely on VE testimony).

Claimant proffers *Bennett* for the proposition that "[m]ost courts analyzing this issue have found a potential or apparent conflict between a *DOT* job description requiring frequent reaching and a claimant's limitation of no overhead reaching or occasional reaching with one arm." (Doc. 12 at 4 (quoting *Bennett*, 2016 WL 7395795, at *6).)  In *Bennett*, the claimant was limited to only occasional overhead reaching with his non-dominant upper extremity.  2016 WL 7395795, at *4.  At the hearing in *Bennett*, the ALJ did not ask if the VE's opinions were consistent with the *DOT* and whether there was a reasonable explanation if they were not.  *Id.* at *6.  In reaching its decision to reverse the ALJ's conclusion that the claimant could perform jobs requiring frequent reaching, *Bennett* reasoned that "frequent reaching includes reaching overhead with both arms.  The *DOT* does not distinguish between types of reaching or reaching with the left or right hand.  It is unclear whether the ALJ decided (without stating) that the jobs identified by the VE could be performed while reaching with only one arm." *Id.*

While there may be some appeal to *Bennett's* position of adopting the broad definition of "reaching" in the absence of VE testimony reconciling apparent inconsistencies between *DOT* job descriptions and VE job suggestions, the Eighth Circuit has not adopted this position.  Thus, *Kemp* is still the leading case on the issue and, as discussed, *Kemp* can be distinguished on the facts.  *Bennett*, too, can be distinguished on the facts because unlike the ALJ in *Bennett* who did not ask the VE if the someone could perform the jobs at issue with the claimant's arm limitations, the ALJ in the instant case asked the VE if a hypothetical person could perform Claimant's previous jobs with no overhead reaching with her left arm.  (AR at 53.)  Therefore, the ALJ in this case resolved any apparent conflict between the *DOT* job requirements of the dispatcher job and Claimant's RFC limiting her to no overhead reaching with her left arm.

Finally, I find that a case from this Court is on point.  In *Melsha v. Colvin*, the claimant's RFC limited him to "occasional overhead lifting with the left dominant upper extremity."  No. C14-0003, 2014 WL 5858561, at *5 (N.D. Iowa Nov. 12, 2014).  At the hearing, the VE responded to one hypothetical by stating there were three jobs that the person could perform, all of which required frequent reaching.  *Id.* at **6-7.  When the ALJ asked if the person could still perform the jobs if he was limited to "only occasional overhead reaching with his left dominant upper extremity," the VE testified that the person could still perform the jobs.  *Id.* at *7.  *Melsha* held that the ALJ properly resolved the apparent dispute between the *DOT* and the claimant's limitations.  *Id.* at *8.

> Here, unlike in *Kemp*, the ALJ specifically asked the vocational expert whether limiting Melsha to occasional overhead reaching with his left upper extremity would preclude the jobs of cafeteria attendant, marker, and mail clerk.  The vocational expert answered that such a limitation would not preclude Melsha from those particular jobs.  Thus, the ALJ resolved any apparent conflict between Melsha's RFC and the *DOT* by specifically asking the vocational expert whether Melsha could perform the jobs of cafeteria attendant, marker, and mail clerk with the limitation of occasional overhead reaching with his left arm, and the vocational expert testified that such a limitation would not preclude Melsha from being able to perform those jobs.  Because the ALJ provided the vocational expert with a proper hypothetical question, and elicited testimony from the vocational expert to resolve any possible conflict between the hypothetical and the *DOT*, the Court finds that the ALJ did not err in relying on the vocational expert's testimony.

*Id.*[6]

Similarly, in this case, the ALJ asked the VE whether limiting Claimant to no overhead reaching with the upper left extremity would preclude any of Claimant's past relevant work.  The VE answered that such a limitation would not preclude any of that

---

[6] Neither the *Melsha* court nor the parties addressed whether there was a difference between the "lifting" restriction in the claimant's RFC and the "reaching" restriction in the hypothetical proffered to the VE.  It appears *Melsha* treated them as equivalent for the purpose of this analysis.

work. Thus, just as the ALJ in *Melsha* resolved any apparent conflict between Melsha's RFC and the *DOT* by eliciting testimony that a limitation to occasional overhead reaching with his left upper extremity would not preclude Melsha from being able to perform those jobs, the ALJ in the instant case also resolved any apparent conflict between Claimant's RFC and the dispatcher job by asking if a limitation to no overhead reaching would preclude Claimant from performing her past work and having the VE testify that no work would be precluded.

I find that substantial evidence supports the ALJ's decision that Claimant could perform her past relevant work as it is generally performed.

**B.** *The ALJ provided good reasons for the weight afforded to Dr. Lips's opinion.*

On December 3, 2015, Barbara Lips, Ph.D. performed a mental status evaluation of Claimant at the request of Social Security Administration ("SSA"). (AR at 351-54.) Dr. Lips is a licensed psychologist. (*Id.* at 354.) Claimant was on time and appropriately dressed for her appointment, was oriented times three, alert, attentive, cooperative, and readily redirectable when she appeared to get off task. (*Id.* at 353.) Her mood was mildly dysphoric and her affect was mildly restricted and congruent with content of speech and circumstances. (*Id.*) Claimant appeared to be of average intellectual ability, her immediate and recent memory were intact, and her remote memory was within normal limits. (*Id.*) Claimant's insight was fair to good and her judgment and impulse control were good. (*Id.*) Claimant performed well on the tasks in her examination:

> [Claimant] performed Reverse Serial Sevens without error. She provided correct responses to four of four general information questions. She provided an appropriate response to a simple problem-solving situation. She answered two simple mathematical calculations correctly. Proverb interpretation was "no idea never heard of it" on one attempt, "oh my gosh" followed by a fair explanation on a second, and no answer on a third. She was able to spell a word correctly on forward spelling but transposed two letters on backward spelling. She was able to identify common objects, repeat a simple statement, follow a simple three-step oral instruction, and

13

read and follow a simple written instruction. She provided a mostly acceptable copy of a simple abstract design. When asked to write a sentence, she wrote in a neat hand, "I drove my car to come to this appointment."

(*Id.*) Dr. Lips noted the following psychological limitations on work-related activities:

She appears able to remember and understand instructions, procedures, and locations of up to moderate complexity, but would have difficulty maintaining attention, concentration, and pace some of the time. She might need some breaks or accommodations at times. She appears able to interact appropriately with supervisors, coworkers, and the public. Her judgment appears adequate but she probably would prefer a role in which she did not have significant responsibility for making decisions, and she also probably would prefer rather routine workplace environment.

(*Id.* at 354.) The ALJ gave the opinion great weight because it had "consistency with and support from the other evidence in the record, including the claimant's function report admissions, the absence of any counseling, and her mental status exam results." (*Id.* at 22.)

Claimant argues that "the ALJ did not weigh the opinions of Dr. Lips, and instead explained he was affording the nonexamining psychological consultant opinions great weight." (Doc. 12 at 7.) Claimant also argues that "a need for attention, concentration, and pace accommodation some of the time is not compatible with non-severe mental impairments and would need to be accounted for in an RFC." (*Id.*) According to Claimant, the ALJ's oversights resulted in an inappropriate RFC that did not include any mental restrictions and "found [Claimant] capable of performing skilled work." (*Id.* at 7-8.)

The Commissioner responds, "When the part of the opinion plaintiff emphasizes is properly viewed in context with the other evidence, its vague indication of 'difficulty maintaining attention, concentration, and pace some of the time,' neither amounts to RFC

limitations, nor is it suggestive of a severe mental impairment." (Doc. 16 at 11.) The Commissioner asserts that the vagueness of this part of Dr. Lips's opinion is of limited value and that the ALJ was entitled to accept only part of Dr. Lips's opinion. (*Id.* (citing *Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996).) The Commissioner also correctly points out that the ALJ weighed Dr. Lips's opinion, and therefore, Claimant's argument that he did not do so is without merit.

The parties are arguing over the significance of one and one-half sentences in Dr. Lips's opinion: "She appears able to remember and understand instructions, procedures, and locations of up to moderate complexity, *but would have difficulty maintaining attention, concentration, and pace some of the time. She might need some breaks or accommodations at times.*" (AR at 354 (emphasis added).) Claimant appears to assert that remand is necessary because this part of the opinion should have trumped all other evidence in the record since it was included in the opinion of an examining physician. The Commissioner, on the other hand, argues that the record on the whole supports the ALJ's RFC, including the lack of psychological limitations. As previously discussed, the Commissioner also argues that even Dr. Lips's opinion and examination notes do not support a conclusion that Claimant has more than mild psychological problems.

The ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "Because [a] claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific

15

medical opinion." *Id.* (citing *Myers*, 721 F.3d at 526-27) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). Although Claimant bears the burden to "provid[e] the evidence [the Court] will use to make a finding about [Claimant's] residual functional capacity," the Court is "responsible for developing the claimant's complete medical history." 20 C.F.R. § 404.1545(a)(3) (2019). "The ALJ's obligation to develop the record 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Coleman v. Colvin*, No. 13cv1004 EJM, 2013 WL 4069523, at *2 (N.D. Iowa Aug. 12, 2013) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).

"The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)); *Martin v. Berryhill*, No. 1:18-CV-00004 JM/PSH, 2019 WL 138655, at *6 (E.D. Ark. Jan. 8, 2019) (explaining that "the ALJ must weigh the various medical opinions in the record") (citation omitted), *R. & R. adopted*, 2019 WL 334202 (E.D. Ark. Jan. 25, 2019). In addition, the ALJ may reject portions of medical opinions that are not supported by the record. *Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) (adopting most, but not all, of treating physician's opinion into RFC because not all of opinion was supported be the record).

The ALJ concluded that Claimant's "alleged depression and anxiety likely have no significant impact on her functioning." (AR at 20.) He found that Claimant experienced "mild, if any, limitations across the four broad areas of psychological functioning" measured by SSA. (*Id.*) The ALJ's conclusion is supported by the record.

The ALJ gave Dr. Lips's opinion great weight, in part, because it was consistent with the record as a whole. This is true. In her function report, Claimant did not state

that her symptoms affected her memory, concentration, understanding, ability to follow instructions, or ability to get along with others. (*Id.* at 215.) Claimant's daily activities also demonstrate she is able to perform a variety of work duties for eight-hours a day consistent with her RFC. Claimant prepares "all kinds of meals" daily with one child helping her, shops in stores, attends to her own hygiene and personal care, pays her own bills, counts change, decorates her house, "does a lot of baking," does "fun stuff" with her kids, and tries to keep herself busy. (*Id.* at 212, 353.)

State Agency Consulting Psychologist Beverly Westra reviewed the record on December 29, 2015 and found the Claimant had mild restrictions in her activities of daily living and in maintaining concentration, persistence, and pace. (*Id.* at 63. ) She found Claimant had no difficulties in maintaining social functioning and no repeated episodes of decompensations, each of extended duration. (*Id.*) Dr. Westra concluded that Claimant's impairment "caus[ed] no significant functional restrictions and is considered nonsevere." (*Id.*) On reconsideration, Dr. Jennifer Ryan, Ph.D., affirmed the opinion as written. (*Id.* at 80.) The ALJ gave these opinions great weight. The opinions of the State Agency consultants opinions also support the ALJ's conclusion are in concert with the majority of Dr. Lips's opinion.

In addition, Claimant did not seek counseling or other therapy for her psychological problems. (AR 351-52). Her only treatment consists of medication prescribed by her primary care provider. (*Id.* at 351.) A lack of counseling or therapy supports a finding of a non-severe mental impairment. *See Anderson v. Astrue*, No. 10–3433–SSA–CV–S–MJW, 2012 WL 511488, at *2 (W.D. Mo. Feb. 15, 2012) (citing *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000), in which "the absence of any evidence of ongoing counseling or psychiatric treatment" contributed to a finding that the claimant was not disabled). Importantly, the medication works for Claimant. She stated that she cries often, but that "the depression medication really helps the cryin' part." (*Id.*

at 352.)  An impairment that is controlled with treatment or medication is not considered disabling.  *Brace v. Astrue*, 578 F3d. 882, 885 (8th Cir. 2009) (citations omitted).

At the hearing, Claimant testified that she cries when she is anxious about big events such as holiday preparations or hosting a baby shower.  (*Id.* at 42-43.)  She also stated that she would get shaky when her children fought with each other, but now that her children are better about fighting, she does not cry as much.  (*Id.* at 352.)  Claimant stated these are her only depression symptoms.  (*Id.*)  In her function report, Claimant stated that although stress bothered her sometimes, she was "ok handling it."  (*Id.* at 216.)  In addition, the ALJ cited to treatment notes from Dr. Brandon E. Bourgeous, who described Claimant as fully oriented, with intact memory, normal mood, and appropriate affect at appointments.  (*Id.* at 20 (citing *Id.* at, 390, 399, 502).)  These are only some of the treatment notes in the record that describe Claimant in similar ways.  *See, e.g.*, (*id.* at 330, 411, 503, 526.)  Claimant cites no treatment notes that contradict these notes.  Therefore, Claimant's own statements and the treatment notes in the record support the ALJ's decision and are in concert with the majority of Dr. Lips's opinion.

After a thorough review of the record, I find that the ALJ's decision is supported by the record as a whole.  The record does not indicate that Claimant experiences any more than mild, if any, limitations due to psychological symptoms.  As the ALJ noted, Claimant even discontinued taking prescribed depression medication without explanation.  (*Id.* at 658.)  Claimant admitted that her medication works to mitigate crying episodes and that her children have curbed their fighting tendencies.  Even Claimant's testimony that she has anxiety attacks when she is planning a big event or preparing for a holiday does not undermine this finding.  Situational stressors cannot provide the basis for a disability finding.  *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (no disability finding when claimant's depression was situational and improved with treatment).

18

Claimant cites *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007) for the proposition that that a step two error is not always harmless and can form the basis of a remand. However, *Nicola* can be distinguished from the case at bar. *Nicola* reversed the decision of the ALJ to not include a claimant's diagnosis of borderline intellectual functioning as a severe impairment at step 2 of the five-step process and remanded the case for further proceedings. 480 F.3d at 887. The Commissioner conceded in *Nicola* that the ALJ should have considered this impairment severe, but argued that the error was harmless. *Id.*

The *Nicola* court was addressing a request for remand based on a diagnosed impairment. In the case at bar, I am addressing a request for remand based on sentences that are not at odds with the rest of an examining psychologist's report and the record as a whole. Moreover, Dr. Lips did not say *when* Claimant would have difficulty maintaining attention, concentration, and pace or how long "some of the time" might be. Dr. Lips's statement that "Claimant might need some breaks or accommodations *at times*" is unhelpful because "might" and "at times" gave the ALJ no guidance regarding when the breaks should occur, if at all, or how long they should be if breaks are even necessary. The ALJ was allowed to adopt only the portions of Dr. Lips's opinion that were consistent with the record as a whole. *See Pirtle*, 479 F.3d at 934. As *Pirtle* held, "[t]he ALJ properly relied on the portion of [the physician's] opinion which was supported by substantial record evidence and properly disregarded the unsupported . . . portion of the treating physician's RFC opinion. . . . Further, we note that [the physician's] RFC assessment does not assert that the thirty minutes of rest is required. Rather, he indicates that such rest would be beneficial." *Id.* at 934-35.

The same is true in the instant case. The ALJ properly relied on the portions of Dr. Lips's opinion that were supported by substantial evidence and properly disregarded the unsupported portion of the opinion. Claimant did not state that psychological

limitations interfered with her ability to work. She focused on her physical limitations. (AR at 39, 44, 50, 211.) No physician has stated Claimant needs breaks because of her depression or anxiety. Claimant's lifestyle and very conservative treatments also support the ALJ's decision. Further, Dr. Lips's opinion does not say that Claimant would definitely have difficulty maintaining attention, concentration, and pace. And, as discussed, Dr. Lips does not define "some of the time." In addition, Dr. Lips merely contemplated that Claimant *might* need s*ome* breaks or accommodations *at times*. Therefore, the ALJ properly rejected this part of Dr. Lips's opinion, adopted the rest of the opinion, which is consistent with the record as a whole, and crafted a mental RFC that reflected Claimant's impairments. I likewise find there is no need to remand for further development of the record because the ALJ had an adequate and unambiguous record upon which to make his decision. *See Coleman*, 2013 WL 4069523, at *2. The medical records, including Dr. Lips's opinion, and Claimant's own disclosures uniformly support the ALJ's RFC.[7]

## C.  *Claimant failed to timely raise her Appointments Clause argument under Lucia v. SEC.*

In *Lucia v. SEC*, the Supreme Court held that ALJs of the Securities and Esxchange Commission are "Officers of the United States" within the meaning of the

---

[7] The Commissioner argues that the ALJ was also allowed to reject the contested parts of the opinion on the basis of vagueness. (Doc. 16 at 11 (citing *Piepgras*, 76 F.3d at 236 (concluding treating physician's opinion was so vague it was not entitled to any greater deference than any other opinion in the record).) Claimant responds that the ALJ never stated he found Dr. Lips's opinion vague or that we know the ALJ's thought processes. (Doc. 17 at 4.) This is true. However, because the ALJ did not find the opinion vague, the ALJ was also not required to seek clarification from Dr. Lips, as Claimant suggests. (*Id*. at 5.) Because the ALJ never found Dr. Lips's opinion vague and because *Pirtle* provides a proper legal basis for the ALJ's decision, I find that vagueness is not a basis upon which to base my recommendation to affirm the ALJ's decision. The record as a whole simply does not support these limitations. *Pirtle*, 479 F.3d at 934.

Appointments Clause, and, therefore, the President, a court of law, or department head must appoint them. 138 S. Ct. at 2049. Claimant argues that SSA ALJs should be treated as improperly appointed "inferior officers" like the SEC ALJs in *Lucia*. (Doc. 12 at 8-12.) Claimant asserts this Court should vacate the denial of benefits by ALJ Sandbothe and remand the case for decision by what she contends is a properly-appointed ALJ. (*Id.* at 8.) Claimant admits she is asserting this Appointments Clause challenge for the first time in her brief to this Court. (*Id.* at 9-10.)

Claimant's case presents a procedural difference from most of the other cases that I have previously addressed on this issue. In this case, the Appeals Council denied review of the ALJ's decision after *Lucia* was decided on June 21, 2018. The Appeals Council denied Claimant review on September 14, 2018. (AR at 1-5.) However, that procedural difference did not change the arguments proffered by Claimant and does not change my recommendation. It does, however, change part of the final reasoning for my recommendation.

Claimant asserts that her case can be distinguished from many of the earliest cases addressing this issue because the earlier cases were decided before EM-18003 was issued by the SSA and before former Acting Commissioner Berryhill's authority lapsed, which "led the SSA to lack a Department Head that could provide a remedy for an Appointments Clause challenge." (Doc. 12 at 7.) For support, Claimant cites SSR 19-1p, 2019 WL 1202036, Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC)* on Cases Pending at the Appeals Council. (Doc. 17 at 8.) However, SSR 19-1p is inapplicable to Claimant's case because the ruling only applies to challenges timely raised before the Appeals Council or previously raised at the ALJ level. 2019 WL 1202036, at *9583; *see also Murphy v. Comm'r of Soc. Sec.*, No. 18-CV-61-LRR, 2019 WL 2372896, at *7 (N.D. Iowa April 10, 2019) (addressing SSR 19-1p and holding that

claimant waived *Lucia* issue when she raised it for the first time in the district court), *appeal docketed*, No. 19-2202 (8th Cir. June 12, 2019).

Claimant also cites *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019), *affirmed*, *Cirko ex rel Cirko v. Comm'r of Soc. Sec.*, No. 19-1772, -- F.3d --, 2020 WL 370832 (3d Cir. Jan. 23, 2020); *Probst v. Berryhill*, No. 5:18-cv-130-JG, 2019 WL 1749135 (E.D.N.C. March 22, 2019), *appeal docketed*, *sub nom Probst v. Saul*, No. 19-1529 (4th Cir. May 17, 2019); and other cases from those districts and encourages the Court to adopt *Bizarre's* reasoning in this case. (Doc. 12 at 10.) The *Bizarre* court held that it did "not believe that [the claimant] was required to raise her [Appointments Clause challenge] before the ALJ or Appeals Council in the first instance or that failure to do so worked a forfeiture of that claim." 364 F. Supp. 3d at 425. I respectfully disagree and decline to adopt the *Bizarre* court's holding. Instead, I agree with the holding in *Murphy*: "[T]he court respectfully disagrees with the *Bizarre* court's holding. This court believes that failure to raise an Appointments Clause challenge before the ALJ or Appeals Council at the agency level waives the issue on judicial review at the district court level." 2019 WL 2372896, at *7 (citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013); *Anderson v. Barnhart*, 344 F.3d 809, 814) (8th Cir. 2003)).

Furthermore, the recent decision in *Griffin v. Comm'r of Soc. Sec.* addressed the Third Circuit's decision in *Cirko ex rel Cirko v. Comm'r of Soc. Sec.*, No. 19-1772, -- F.3d --, 2020 WL 370832 (3d Cir. Jan. 23, 2020), and provided additional reasons why *Murphy* is still the better view. No. 18-CV-85-LRR, 2020 WL 733886 (N.D. Iowa Feb. 13, 2020).

> [I]n *Ramazetti v. Comm'r of Soc. Sec.*, No. 8:19-cv-260-T-MAP, 2020 WL 428950 (M.D. Fla. Jan. 28, 2020), the district court determined that the claimant's Appointments Clause challenge failed because the claimant waived the issue by not raising it before the ALJ or Appeals Council. *See id.* at *8. Further, the district court stated that "[t]he Supreme Court in *Lucia* did not make a blanket finding that all ALJs are subject to the

Appointments Clause, just that SEC ALJs are so subject." *Id.* The district court points out that, "[a]t the time the Supreme Court decided *Lucia*, the SEC had only five ALJs. . . . In contrast, there are currently over 1,700 Social Security Administration ALJs." *Id.* The district court also notes that "[t]he Social Security Administration annually receives about 2.6 million initial disability claims and completes about 689,500 ALJ hearings; in 2018, it took an average 809 days to process a claim from its initial receipt to an ALJ decision, with more than 850,000 people waiting for ALJ hearings." *Id.* The district court concluded that "[i]f courts were to apply *Lucia* to Social Security cases as Plaintiff argues this [c]ourt should, millions of cases would need [to] be remanded for rehearing by a different ALJ. Given these important efficiency concerns and the Supreme Court's specific findings in *Lucia*, the [c]ourt is skeptical that *Lucia* is even controlling as to Social Security Administration ALJs." *Id.* (quoting *Miaolino v. Comm'r of Soc. Sec.*, No. 2:18-cv-494-FtM-UAM, 2019 WL 2724020 (M.D. Fla. July 1, 2019)).

*Id.* at \*10 (all alterations except first set of brackets in original).

This Court has ruled in favor of the Commissioner on similar claims on several occasions. *See Hall v. Saul*, No. 18-CV-2032-LTS-KEM, 2019 WL 5085427, at \*16 (N.D. Iowa Oct. 10, 2019); *Gilbert v. Saul*, No. C18-2045-LTS, 2019 WL 4751552, at \*20 (N.D. Iowa Sept. 30, 2019); *Squier v. Saul*, No. 18-CV-3026-LTS, 2019 WL 4696415, at \*10 (N.D. Iowa Sept. 26, 2019); *Rollie v. Saul*, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at \*10 (N.D. Iowa Sept. 25, 2019); *Dewbre v. Comm'r of Soc. Sec.*, No. 18-CV-4055-LRR, 2019 WL 4344288, at \*6 (N.D. Iowa Sept. 12, 2019); *Sexton v. Saul*, No. C18-1024-LTS, 2019 WL 3845379, at \*8 (N.D. Iowa Aug. 15, 2019); *Frazer v. Saul*, No. C18-2015-LTS, 2019 WL 3776996, at \*4 (N.D. Iowa Aug. 12, 2019); *Murphy*, 2019 WL 2372896, at \*7; *White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at \*4 (N.D. Iowa Mar. 18, 2019); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at \*6 (N.D. Iowa Sept.14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at \*8-9 (N.D. Iowa Sept. 10, 2018); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at \*9 (N.D. Iowa

Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018).

In *Stearns*, this Court ruled as follows:

> The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find this holding to be consistent with [relevant precedent]. Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).
>
> In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id.* In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level.
>
> Because Stearns did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, I find that she has forfeited the issue for consideration on judicial review. As such, her request for remand on this basis is denied.

2018 WL 4380984, at **5–6 (paragraph break added).

Finally, although Claimant argues that raising the issue during the administrative process would have been futile because Social Security EM-18003 prevented the ALJ from addressing the issue (Doc. 12 at 9-10), nothing stopped Claimant from raising the issue during the administrative process and preserving it for appeal or attempting to raise it in an amended appeal since *Lucia* was decided prior to the Appeals Council's decision in her case. In addition, Claimant's argument that former Acting Commissioner Berryhill's authority lapsed between November 2017 and April 2018, leaving the SSA

with no one with the power to appoint an inferior officer to hear her claim or otherwise decide her claim much of the time it was pending (Doc. 17 at 8-10), is unavailing for the same reason. Nothing prevented Claimant from raising this issue in her appeal or attempting to raise it in an amended appeal once *Lucia* was announced.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm** the decision of the ALJ and **dismiss Plaintiff's case with prejudice**.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 24th day of February, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

25