# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DAWN M. BLOCK,<br><br>    Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | No. C18-118-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable Mark A. Roberts, United States Magistrate Judge. Doc. No. 19. Judge Roberts recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Dawn Block's application for disability insurance benefits (DIB) under Titles II of the Social Security Act (the Act), 42 U.S.C. §§ 401–34. Block filed objections (Doc. No. 20) to the R&R. The Commissioner has not responded.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003) (quoting *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998)). The Eighth Circuit has explained

that the standard "is something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). However, the court does not "reweigh the evidence presented to the ALJ," *id.* at 555, or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted).

If, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (citation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. Review of Report and Recommendation

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III. THE R&R

Block protectively filed an application for DIB on September 4, 2015, alleging disability since March 11, 2015, due to fibromyalgia, anxiety, depression, hypothyroidism, anemia, severe migraines and heavy menstruation. AR 57. The Social Security Administration (SSA) denied Block's application initially and on reconsideration. *Id.* at 56–86. After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation process and found that Block was not disabled because, based on her residual functional capacity (RFC), she is capable of performing her past relevant work as a dispatcher. *Id.* at 14, 23–24. The Appeals Council denied Block's request for review on September 14, 2018, after which Block timely filed a complaint requesting judicial review. *Id.* at 1–3; *see also* Doc. Nos. 1, 3, 12.

### A. Block's Arguments

Block asserts that the Commissioner's decision should be reversed and her case remanded for three reasons. First, she argues that the ALJ's conclusion at Step Four of the disability evaluation process was not supported by substantial evidence. Doc. No. 12 at 3–6. Specifically, she contends that the ALJ improperly relied on the testimony of a vocational expert (VE) regarding the general performance requirements of her past relevant work because the ALJ failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT). *Id.* at 3–5. The hypothetical posed to the VE limited Block to no overhead reaching with her left (dominant) arm,[1] but the DOT describes her past relevant work as requiring frequent reaching. *Id.* at 4. She also argues that the record as a whole does not support the ALJ's conclusion that she can still perform her past relevant work as it was actually performed. *Id.* at 5–6.

---

[1] I note that the ALJ's final RFC determination limited Block to occasional overhead reaching with the left arm. AR 17.

4

Second, Block argues that the ALJ erred by excluding, or failing to adequately consider, findings made by Barbara Lips, Ph.D., in determining Block's severe mental impairments and mental RFC. *Id.* at 6–8. Dr. Lips conducted a consultative exam for the SSA and provided an opinion that found some mental limitations. *Id.* According to Block, the ALJ did not adequately address why those findings were omitted from Block's RFC despite giving Dr. Lips' opinion great weight. *Id.* at 7–8.

Finally, Block argues that the ALJ who ruled on her case was not properly appointed in accordance with the requirements of *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). *Id.* at 8–12. Therefore, her case should be remanded for a new hearing before a judge who has been properly appointed. *Id.*

## B. *The Commissioner's Arguments*

In response to Block's first argument, the Commissioner concedes that the record does not contain sufficient evidence regarding Block's prior work to find that she can perform it as it was actually performed. Doc. No. 16 at 15. Thus, the Commissioner argues that the VE's testimony did not conflict with the DOT and the ALJ properly relied on it in concluding that Block can perform her past relevant work as it is generally performed. *Id.* at 22–23. The Commissioner argues that there was no conflict for three reasons: (1) the VE specifically stated that someone with Block's single-arm limitation, or even a no-overhead-reaching limitation, could perform the job, (2) the DOT definitions provide an approximate maximum and range for job requirements and the ALJ's hypothetical sufficiently overlapped with the DOT and (3) the DOT's frequent reaching element refers to reaching in any direction, while Block was limited only in reaching one arm in a single direction. *Id.* at 16–18.

Next, the Commissioner argues that the ALJ did not err at Step Two or in determining Block's mental RFC. *Id.* at 7–14. Regarding Step Two, the Commissioner argues that substantial evidence in the record, including Dr. Lips' opinion, shows that Block's mental impairments are not severe. *Id.* at 7–8. As for Block's RFC, the

Commissioner notes that an ALJ is not required to rely on any particular RFC opinion when determining a claimant's RFC. *Id.* at 8. The Commissioner contends that the ALJ relied on multiple RFC opinions, including Dr. Lips', and ultimately concluded that no opinion justified finding severe mental impairments or mental RFC limitations. *Id.* at 8–11. The Commissioner argues that any portions in Dr. Lips' opinion to the contrary are too vague, or otherwise unsupported by the record as a whole, to alter that conclusion. *Id.* at 11–12.

Finally, the Commissioner notes that this court has repeatedly rejected Appointments Clause challenges when the issue was not raised during administrative proceedings and urges the same conclusion in this case. *Id.* at 23, 36.

## C. *Judge Roberts' Analysis*

Judge Roberts recommends that I affirm the Commissioner's decision. Doc. No. 19 at 25. First, Judge Roberts found that substantial evidence supports the ALJ's Step Four conclusion. *Id.* at 7. Noting that a claimant will be found not disabled at Step Four if he or she can perform past relevant work either as it was actually performed *or* as it is generally performed, Judge Roberts found that the ALJ's reliance on the VE's testimony was proper because any possible conflict between the VE's testimony and the DOT was resolved. *Id.* at 7, 12–13. According to Judge Roberts, the fact that the ALJ asked whether an individual could perform the work even if she could never reach overhead with one arm, despite ultimately finding that Block can do so occasionally, indicated that the ALJ recognized an inconsistency with the DOT and allowed the VE to testify regarding it. *Id.* at 10. Judge Roberts found support in *Melsha v. Colvin*, No. C14–0003, 2014 WL 5858561 (N.D. Iowa Nov. 12, 2014), in which this court held that specifically asking the VE whether a claimant limited to occasional overhead reaching with one arm could perform specific jobs, after asking generally if the claimant could perform other jobs in the national economy, resolved conflicts with the DOT. *Id.* at 12.

Next, Judge Roberts addressed Dr. Lips' opinion and found that the medical record as a whole, including Dr. Lips' opinion and Block's own disclosures, supports the ALJ's Step Two and mental RFC conclusions. *Id.* at 13–20. Judge Roberts noted that the parties dispute the significance of only one small portion of Dr. Lips' opinion, in which she stated that "[Block] appears able to remember and understand instructions, procedures, and locations of up to moderate complexity, *but would have difficulty maintaining attention, concentration, and pace some of the time. She might need some breaks or accommodations at times*." *Id.* at 15 (quoting AR 354). While Judge Roberts acknowledged that Dr. Lips' statements indicate that Block has some mental limitations, he found that the record contained substantial evidence supporting the ALJ's conclusions that Block suffered from no more than mild mental impairments and limitations. *Id.* at 16–18. No other physician opined that Block's ability to work was affected by any mental impairment. *Id.* at 20. Additionally, Block's daily activities, as well as the fact that some of her mental impairments were well controlled with medicine, indicate that she is not limited by mental impairments. *Id.* at 16–18. Thus, Judge Roberts concluded that the ALJ properly weighed Dr. Lips' opinion by giving great weight to it overall but adopting only those parts of the opinion that were consistent with the record in reaching his Step-Two and RFC conclusions. *Id.*

Finally, Judge Roberts addressed Block's Appointments Clause challenge. *Id.* at 20–25. Finding her arguments practically indistinguishable from those addressed by numerous prior cases holding that claimants forfeit an Appointments Clause challenge when it is not raised before an ALJ's decision becomes final, Judge Roberts recommends denying relief on this issue. *Id.* at 23–25.

## IV. ANALYSIS

Block's objections to the R&R largely echo the arguments raised in her principal brief. She reasserts her argument that the ALJ improperly relied on the VE's testimony in concluding that Block can perform the work of dispatcher as it is generally performed.

Doc. No. 20 at 2–3. She argues that Judge Roberts, and the ALJ, improperly "assume[d] away the DOT conflicts" contrary to the Eighth Circuit's opinion in *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018). *Id.* at 3. She also reasserts her argument that the ALJ erred in considering Dr. Lips' opinion. *Id.* at 4. She argues that the ALJ failed to sufficiently explain why the portions of that opinion indicating mental limitations were omitted, or disregarded, despite giving the opinion great weight overall. *Id.* Finally, Block contends that the ALJ assigned to her case was not properly appointed. *Id.* at 4–9. She requests remand on this basis or, in the alternative, a stay of these proceedings pending the Eighth Circuit's ruling on this issue in cases now pending. *Id.*

### A.  Dr. Lips' Opinion

Block argues that the ALJ erred at Step Two because Dr. Lips "found mental limitations and the ALJ concluded[,] without sufficient explanation[,] that Ms. Block's mental impairments were non-severe." Doc. No. 20 at 4. She also asserts that the ALJ erred in assessing her RFC at Step Four by disregarding those limitations without adequate explanation. *Id.* Because Block's arguments regarding Dr. Lips' opinion relate to two separate steps of the disability evaluation process, I will address them separately.

#### 1.  ALJ's Step Two Conclusion

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). If the impairment would have no more than a minimal effect on the

claimant's ability to work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that his or her impairment, or combination of impairments, is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (citation omitted).

At Step Two, the ALJ found that Block suffers from three severe physical impairments: obesity, fibromyalgia and left-shoulder impingement. AR 16. However, the ALJ found that Block's medically determinable mental impairments, depression and anxiety, are not severe. *Id.* at 17. In explaining this conclusion, the ALJ found that Block has no limitation in interacting with others and adapting or managing oneself and only mild limitations in understanding, remembering and applying information, and concentrating, persisting or maintaining pace. *Id.*

Block argues that the ALJ's findings do not fairly account for Dr. Lips' opinion, to which he assigned great weight. I disagree. Dr. Lips stated that Block "would have difficulty maintaining attention, concentration, and pace some of the time" such that "[s]he might need some breaks or accommodations." AR 354. Dr. Lips also stated that Block "probably would prefer a role in which she did not have significant responsibility for making decisions" and "would prefer [a] rather routine workplace environment." *Id.* Although these are mental limitations, they are not enough, on their own, to indicate that any of Block's mental impairments are severe. Dr. Lips' findings that Block has difficulties in maintaining attention, concentration or pace only "some of the time" – without elaboration regarding frequency and severity – and a need for "some breaks or accommodations" – without elaboration regarding frequency and the type or length of such breaks or accommodations – do not indicate that Block's mental impairments have any more than minimal impact on her ability to perform basic work activities.

This conclusion is further supported by other portions of Dr. Lips' opinion and the record as a whole. Dr. Lips stated:

9

> [Block] appeared to be functioning in the average range of general intellectual ability. Immediate and recent memory were intact and remote memory appeared within normal limits. Insight appeared fair to good, judgment and impulse control good. She performed Reverse Serial Sevens without error. She provided correct responses to four of four general information questions. She provided an appropriate response to a simple problem-solving situation. She answered two simple mathematical calculations correctly.

AR 353. Dr. Lips also assigned Block a global assessment of functioning (GAF) score of 65, which the ALJ noted "indicates a subjective impression that the claimant's symptoms impose only minimal difficulties on social and occupational function." *Id.* at 17, 354. The record reveals that Block did not seek treatment, counselling or therapy for her mental impairments outside of medications prescribed by her primary care provider. *Id.* at 351–52. Those medications helped with her symptoms, but there is some evidence she chose not to take them at times. *Id.* at 63, 80, 658. Such actions do not indicate the existence of a severe mental impairment. Indeed, after reviewing Block's medical records and Dr. Lips' opinion, two state agency physicians also found that Block "has no severe psychological impairment, with no more than mild limits across four broad areas of mental functioning." *Id.* at 21, 59, 62–63, 79–80.

For these reasons, I find that the record as a whole supports the ALJ's assessment of Block's medically determinable impairments, as substantial evidence indicates that her mental impairments are not severe. Block's objection on this issue is overruled.

### 2. *Block's Mental RFC*

A claimant's RFC is "what [the claimant] can still do" despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). To determine a claimant's RFC, the ALJ must consider all of a claimant's impairments, both severe and non-severe. *Id.* § 404.1545(a)(2). In doing so, the ALJ must evaluate "all of the relevant medical and other evidence" in the record. *See* 20 C.F.R. § 404.1545(a)(3); *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). "Because a claimant's RFC is a medical question, an

10

ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). When presenting an RFC assessment, an ALJ "generally should explain the weight given to opinions . . . or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." 20 C.F.R. § 404.1527(f)(2); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion . . . . [and] . . . why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

In assessing Block's RFC, the ALJ found that Block does not suffer any limitations from mental impairments. AR 17. In presenting his reasoning for this conclusion, the ALJ noted that Block's medical record generally indicated that she did not seek treatment or therapy beyond her primary care provider and had no more than mild symptoms from her mental impairments. *Id.* at 20. Her reported daily activities supported that she suffered few, if any, mental limitations. *Id.* The ALJ quoted from Dr. Lips' opinion extensively and found that it, as well as state agency physicians' opinions, were entitled to great weight. *Id.* at 21. He found that all the opinions indicated that "while the claimant may experience some limited problems, she nevertheless retains the capacity to function in most work situations most of the time." *Id.*

Block argues that Dr. Lips found that Block has some mental limitations, yet the ALJ – despite giving Dr. Lips' opinion great weight – did not include those limitations in Block's RFC or sufficiently explain their omission. Doc. No. 20 at 4. She cites *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017), and a recent case from this court, *Burns v. Saul*, No. 18-cv-72-LTS (N.D. Iowa Jan. 10, 2020), for support. *Id.* In *Gann*, the Eighth Circuit held that an ALJ erred by excluding limitations found "by sources to whom

11

the ALJ gave 'significant weight'" from the RFC assessment and hypotheticals proposed to the VE. *Gann*, 864 F.3d at 953. In *Burns*, I held that the ALJ erred by "[f]inding that [a physician's] RFC opinion 'is consistent with the record as a whole,' and subsequently omitting a limitation described in that opinion without explanation." *Burns*, No. 18-cv-72-LTS, Doc. No. 19 at 15.

Although *Gann* and *Burns* are relevant to the issue here, they are distinguishable. In *Gann*, two physicians stated that the claimant's ability to adapt to changes in a work environment was limited and the ALJ gave their opinions "significant weight." *Id*. However, when posing hypotheticals to the VE at Step Five, the ALJ did not include the claimant's adaptive limitations. *Id*. The Eighth Circuit found that the absence of the adaptive limitations in the hypotheticals prohibited the VE's testimony from being "substantial evidence that [the claimant] is able to perform other work in the national economy" because the ALJ had given significant weight to the opinions that found those limitations *and* did not justify their omission. *Id*. at 953. Presumably, the unexplained omission of the adaptive limitations in the VE hypotheticals was especially egregious due to the nature of the inquiry at Step Five: determining whether a claimant "can make an adjustment to other work" because they can no longer perform prior work. 20 C.F.R. § 404.1520(a)(4)(v).

The circumstances in *Burns* were similar. In that case, the only medical opinions regarding the claimant's RFC were from state agency physicians. *Burns*, No. 18-cv-72-LTS, Doc. No. 19 at 12–13. One physician found that the claimant could "perform simple, repetitive tasks consisting of 1 to 2 step commands." *Id*. at 13. The ALJ mentioned this finding in the RFC discussion and almost immediately thereafter stated that the physician's opinion was entitled to great weight and was consistent with the record as a whole. *Id*. at 15. However, the ALJ did not include the one-to-two-step limitation in the claimant's RFC and did not otherwise explain its omission. *Id*. I found that this was in error. *Id*. at 15–17. Although, the ALJ was not obligated to accept any opinion, in whole or in part, that was inconsistent with the record, I found that the ALJ

erred by excluding, or not sufficiently explaining the omission of, the limitation because the ALJ had given the physician's opinion great weight *and* found that it was consistent with the record as a whole. *Id.* at 15–17. I reversed and remanded the case so the ALJ could either include the limitation in the RFC or explain its omission. *Id.* at 17.

As in *Gann* and *Burns*, the ALJ here did not include mental limitations that were identified in an opinion to which he gave great weight. However, unlike the ALJs in those cases, the ALJ here identified the limitations identified by Dr. Lips and adequately articulated reasons for excluding them from Block's RFC despite giving Dr. Lips' opinion great weight overall. Viewing the limitations identified by Dr. Lips' in light of her opinion as a whole raised doubts about those limitations being anything more than minimal. AR 21. The ALJ also explained that Block's daily activities, failure to seek treatment for her mental impairments beyond her primary care provider and failure to consistently take medication that helped some of her symptoms indicated that her mental impairments were not severe and caused few, if any, limitations. *Id.* at 20–22, 63, 80, 658. Block's medical record, including Dr. Lips' opinion, were also analyzed by two state agency physicians who both concluded that Block suffers from no more than mild difficulties due to her mental impairments. *Id.* at 63, 80. Neither physician believed that Dr. Lips' opinion found greater limitations than their own. *Id.* at 67, 84.

Thus, while Dr. Lips stated that Block has some mental limitations, I find that substantial evidence supports the ALJ's decision to omit them from the RFC and that he adequately articulated his reasons for doing so. The ALJ appropriately found that Dr. Lips' opinion was largely consistent with the record, giving it great weight, and provided adequate reasons for excluding limitations from the opinion that were otherwise inconsistent with the opinions of other physicians and the record as a whole. Therefore, Block's objection is overruled.

## B. ALJ's Step-Four Conclusion

Block argues that the ALJ's conclusion that she can perform past relevant work as a dispatcher is not supported by substantial evidence because the ALJ improperly relied on VE testimony that conflicted with the DOT. Doc. No. 20 at 2. She argues that the VE's testimony conflicted with the DOT because the VE stated that she could perform her past work as a dispatcher while limited to no overhead reaching with her left arm, while the DOT description for the job includes frequent reaching. She asserts that the ALJ, and Judge Roberts, relied too much on the DOT's generic breadth to assume away the conflict. *Id.* at 3. The Commissioner argues that there was no conflict. Doc. No. 16 at 16–18.

At Step Four, the ALJ (1) determines the claimant's RFC, (2) evaluates evidence regarding the demands of the claimant's past relevant work and (3) determines whether the claimant can still perform the past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 404.1560; SSR 82-62, 1982 WL 31386, at *2–4 (Jan. 1, 1982). A claimant who can still perform past relevant work "as previously done or[,] . . . as it is generally performed in the national economy," is not disabled. *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000); *see also* 20 C.F.R. § 1520(4)(iv). Thus, an ALJ may find that a claimant is not disabled if either (1) the plaintiff can still perform past relevant work as it was actually performed or (2) the plaintiff can perform past relevant work based on the general requirements for such work. *Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007); *Lowe*, 226 F.3d at 973. The claimant bears the burden of establishing that he or she cannot perform past relevant work. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

In determining whether a claimant can perform past relevant work, an ALJ may, but need not, obtain the testimony of a VE. *Wagner*, 499 F.3d at 853; *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994). When obtaining VE testimony, the ALJ must "ask about any possible conflict" between the VE's testimony and "information in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). When a conflict exists, the ALJ

has an "affirmative responsibility" to ask about the conflict and receive an explanation. *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014). "Neither the DOT nor the VE . . . evidence automatically 'trumps'" the other, though a VE's explanation adequately resolves a conflict if it "is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." SSR 00–4p, 2000 WL 1898704 at *2. If conflicts between VE testimony and the DOT are not resolved, then the VE testimony "does not constitute substantial evidence upon which the Commissioner may rely." *Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014). Because there is no dispute that the record lacks sufficient evidence to determine if Block can perform her past relevant work as it was actually performed, the question is whether Block can perform her past work as it is *generally* performed.

The ALJ relied exclusively on the VE's testimony in concluding that Block can perform her past work as it is generally performed. AR 23–24. However, in questioning the VE, the ALJ did not inquire whether the VE's testimony was consistent with the DOT. *Id.* at 53–55. Indeed, the transcript does not reflect whether the ALJ or VE actually recognized a possible conflict between Block's limitations and the DOT description for dispatcher, let alone attempted to resolve it. While this constitutes error, an ALJ's failure to inquire regarding conflicts is harmless error unless the VE's testimony actually conflicts with the DOT. *Renfro v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007).

In responding to the ALJ's first hypothetical, the VE testified that a left-handed person who is limited to no overhead reaching and only occasional gross manipulation with the left arm could perform Block's past relevant work as a dispatcher. AR 53–54. However, the DOT description for a motor vehicle dispatcher includes frequent reaching, meaning 1/3rd to 2/3rd of the work day. DOT 249.167-014. And, for purposes of the DOT, reaching is defined as "extending the hands and arms in any direction." *Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014) (citation omitted). Thus, to perform the job of dispatcher, an employee must be able to spend a significant part of the work day "extending the hands and arms in any direction."

Given this information, the VE's testimony that a claimant who is unable to reach overhead with the claimant's dominant hand can perform the job of dispatcher appears to conflict with the DOT description for that job. At minimum, this is a potential conflict that should have been addressed on the record. Based on his training and experience, the VE might well have been able to explain why this is not an actual conflict. Or, at least, the VE may have been able to resolve the conflict. Unfortunately, he was not asked to do so. Even a few additional questions posed by the ALJ could have (a) established that the VE's opinion is consistent with the DOT, (b) permitted the VE to explain any inconsistency or, perhaps, (c) alerted the VE that his opinion does not jibe with the DOT's definition. Any of these outcomes would have avoided the current situation, in which the administrative record provides no explanation for a vocational-expert opinion that appears to be inconsistent with the DOT.[2]

---

[2] I agree with Block that affirming the Step Four decision on the current, deficient record would run afoul of *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018). In *Thomas*, the Eighth Circuit addressed the generic character of DOT job descriptions and explained that this generic character leaves room for explanation as to why a claimant may be able to perform a job despite having an RFC that is more limited than the DOT description requires. *Id*. at 677-78. The court stated:

> [W]e usually refer to the DOT's generic breadth to affirm that an ALJ permissibly viewed an expert's explanation as having eliminated the seeming conflict. *We do not use it to deny that there ever was a conflict*. The Commissioner invites us to hold nonetheless that an explanation was not necessary here since the ALJ could assume, based on the generic nature of the DOT, that such an explanation existed and the expert would have given it if asked. The Commissioner does not direct us to a published decision in which we have expressly held that, and we have found none. Such a holding, in any event, would be inconsistent with our longstanding precedent that an ALJ may not rely on unexplained expert testimony that someone with a particular RFC is qualified to do a job that the DOT describes as exceeding it.

*Id*. at 678 (emphasis added; citations omitted). Here, because there is an apparent conflict and the VE was not asked to explain it, *Thomas* does not permit me to simply assume the conflict away.

In short, the ALJ erred by failing to ask the VE if his opinion is consistent with the DOT. I cannot find the error to be harmless because there appears to be an actual conflict between the VE's opinion and the DOT description of how Block's past relevant work is generally performed. Therefore, the ALJ's Step Four determination is not supported by substantial evidence and Block's objection must be sustained. This case will be remanded with directions for the ALJ to explore the issues of (1) whether the VE's testimony is consistent with the DOT and, if not, (2) whether the inconsistency can be resolved.

## C. *Appointments Clause Challenge*

Because this case will be remanded on other grounds, I need not address this issue. Block may challenge the appointment of the ALJ over her case, if necessary, on remand. For the same reason, I deny Block's request to stay this case pending the Eighth Circuit's decision in the consolidated cases addressing this matter. This objection is overruled.

## V. CONCLUSIONS

For the reasons set forth herein:

1. Block's objections (Doc. No. 20) to the Report and Recommendation (Doc. No. 19) are **sustained in part and overruled in part**, as set forth herein.

2. The Report and Recommendation (Doc. No. 19) is **accepted in part and rejected in part**, as set forth herein.

3. The Commissioner's determination that Block was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings consistent with this order.

4. Judgment shall enter in favor of the plaintiff and against the defendant.

5. If Block wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e., 30 days after the 60-day

time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 30th day of March, 2020.

_____
Leonard T. Strand, Chief Judge